UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DASARADH KANTAMNENI

                          Plaintiff,

            - against -

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY

                          Defendant.

**MEMORANDUM
OPINION & ORDER**

23 Civ. 6453 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

            In this action, Plaintiff Dasaradh Kantamneni alleges that the United States

Department of Homeland Security ("DHS") violated the Administrative Procedures Act ("APA")

by implementing a rule that requires employers submitting H-1B visa petitions to attest that they

have not colluded with other employers to unfairly increase the chances that certain employee

beneficiaries are selected in the H-1B visa lottery.  (See Am. Cmplt. (Dkt. No. 27) ¶¶ 147-77)

            Upon the submission of an employer's petition and approval by DHS component

United States Citizenship and Immigration Services ("USCIS"), H-1B visas allow certain non-

immigrant foreign workers to work in a "specialty occupation" in the United States.  (Id. ¶ 64)

The number of H-1B visas available each fiscal year is capped by statute.  (Id. ¶ 66)  Because

demand for H-1B visas consistently outpaces the statutory cap, USCIS conducts a lottery each

year to select petitions for possible approval.  (Id.)

            An employer submitted a petition for an H-1B visa on Plaintiff's behalf, and that

petition was approved on October 1, 2022.  (Id. ¶ 118)  Soon after starting work with that

employer, Plaintiff took a position with a different firm, transferring his H-1B visa to the new

employer.  (Id. ¶¶ 122-24)  After Plaintiff began work with the new employer, USCIS informed

Plaintiff's prior employer that it intended to revoke its approval of the H-1B petition based on evidence that the employer had violated the attestation requirement that prohibits collusion between companies aimed at increasing a beneficiary's odds of selection in the H-1B lottery.  (Id. ¶¶ 125-27)  The first employer then withdrew the H-1B visa petition it had submitted on behalf of Plaintiff.  (Orise Decl. (Dkt. No. 37) ¶ 15-16)  Plaintiff's H-1B visa at his new employer remains valid until November 10, 2025.  (Id. ¶ 18)  Because the first employer has withdrawn its petition, however, if Plaintiff wishes to retain his H-1B status beyond November 10, 2025, his new employer must re-enter the H-1B lottery.  (Id.)

The Amended Complaint asserts that DHS violated the APA by implementing the anti-collusion attestation requirement without undergoing notice-and-comment rulemaking; by finding Plaintiff inadmissible despite no determination that he made a knowing and voluntary misrepresentation to the government; and by revoking the first employer's H-1B petition without notice to Plaintiff, who is the beneficiary of that petition.  (Am. Cmplt. (Dkt. No. 27) ¶¶ 147-77)

On May 9, 2024, DHS moved to dismiss.  DHS contends that Plaintiff has not established Article III standing, and therefore this case should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  (Def. Br. (Dkt. No. 36) at 19-28)[1]  DHS further contends that the Amended Complaint fails to state a claim that DHS violated the APA, and therefore this case should be dismissed under Fed. R. Civ. P. 12(b)(6).  (Id. at 28-34)

For the reasons stated below, Defendant's motion to dismiss for lack of subject matter jurisdiction will be granted.

---

[1]  The page numbers of documents referenced in this opinion correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

**BACKGROUND**

I.    **H-1B VISA PROCESS**

    A.    **Background**

The Immigration and Nationality Act ("INA"), as amended, defines a class of non-immigrant alien workers that are eligible to work in the United States temporarily to perform services in a "specialty occupation" based "upon [a] petition of the importing employer." 8 U.S.C. §§ 1101(a)(15)(H)(i)(b); 1184(c)(1). The program established by this statutory framework is commonly known as the H-1B visa program.

By statute, the number of H-1B visas is capped at 65,000 per year, with an additional 20,000 H-1B visas available to individuals who have earned a master's or higher degree from a United States institution of higher education, for a total annual allocation of 85,000 H-1B visas. 8 U.S.C. §§ 1184(g)(1)(A)(vii), (g)(5)(A)-(C); (Orise Decl. (Dkt. No. 37) ¶ 4) The demand for H-1B visas exceeds the congressionally imposed statutory cap. Accordingly, DHS regulations provide for an H-1B cap selection process, commonly referred to as a "lottery." See generally 8 C.F.R. § 214.2(h)(8)(iii).

    B.    **Registration**

The first step in the H-1B visa lottery process is registration by the employer.[2] The employer must "register to file a petition . . . through the USCIS website," and that registration "must be properly submitted in accordance with 8 C.F.R. 103.2(a)(1), paragraph

---

[2] On February 2, 2024, the Department of Homeland Security issued a new final rule amending its regulations to, inter alia, create a "beneficiary centric selection process for H-1B registrations." 89 Fed. Reg. 7456 (Feb. 2, 2024). Under the new rule, "[e]ach unique beneficiary who has a registration submitted on their behalf will be entered into the selection process once, regardless of how many registrations are submitted on their behalf." Id. at 7456. Accordingly, the H1-B visa lottery process in place in 2022 and 2023 – the time period relevant to this case – has been substantially revised.

(h)(8)(iii) of this section [8 C.F.R. § 214.2] and the form instructions[.]"  8 C.F.R. §

214.2(h)(8)(iii)(A)(1).  The employer must follow "instructions on how to complete and where to

file a benefit request," including "instructions prescribed by USCIS or other DHS immigration

components on their official Internet Web sites," and other "guidance such as appendices,

exhibits, guidebooks, or manuals."  8 C.F.R § 1.2.

        Employers submitting a registration for the H-1B visa lottery program must attest

that:

-   [a]ll the information contained in the registration submission is complete, true, and correct;

-   [t]he registration[] reflect[s] a legitimate job offer; and

-   [the registrant], or the organization on whose behalf [the registration] is being submitted, ha[s] not work with, or agreed to work with, another registrant, petitioner, agent, or other individual or entity to submit a registration to unfairly increase chances of selection for the beneficiary or beneficiaries in [the] submission.

(Orise Decl., Ex. 4 (Rev. Not.) (Dkt. No. 37-4) at 3)

        In the instructions for registration, USCIS warns that if it

finds that this attestation was not true and correct (for example, that a company
worked with another entity to submit multiple registrations for the same
beneficiary to unfairly increase [the] chances of selection for that beneficiary),
USCIS will find that registration to not be properly submitted.  Since the
registration was not properly submitted, the prospective petitioner would not be
eligible to file a petition based on that registration in accordance with the
regulatory language at 8 CFR 214.2(h)(8)(iii)(A)(1).  USCIS may deny or revoke a
petition based on a registration that contained a false attestation and was therefore
not properly submitted.

(Id.)

        Once USCIS has received registrations sufficient to meet the statutory H-1B caps,

USCIS will no longer accept registrations for cap-subject petitions.  8 C.F.R. §§

214.2(h)(8)(iii)(A)(5)-(6).

C.    **The H-1B Petition**

If an employer's registration is selected in the lottery, USCIS sends a notification to the employer's online account with filing instructions.  8 C.F.R. § 214.2(h)(8)(iii)(C); see also id. § 214.2(h)(8)(iii)(D)(2).  The employer must then file a Form I-129 requesting the classification of the foreign national as an H-1B nonimmigrant worker (known as an "H-1B petition").  See 8 U.S.C. § 1101(a)(15)(H)(i)(b); 8 C.F.R. § 214.2(h)(4)(iii)(B).

USCIS will notify the petitioning employer of any subsequent approval, denial, intent to revoke, or revocation of the H-1B visa petition.  8 C.F.R. §§ 214.2(h)(9)-(11).  Under the applicable regulations, USCIS is not required to provide notice of any of these actions to the foreign national beneficiary on whose behalf the petition was submitted.  See generally 8 C.F.R. § 214.2(h).  DHS regulations similarly provide that beneficiaries of H-1B visa petitions are not "affected parties" with legal standing in administrative proceedings.  See, e.g., 8 C.F.R. § 103.2(a)(3) ("A beneficiary of a petition is not a recognized party in such a proceeding."); id. § 103.3(a)(1)(iii)(B) ("[A]ffected party . . . means the person or entity with legal standing in a proceeding.  It does not include the beneficiary of a visa petition.") (emphasis in original).

If the employer's H1-B visa petition is approved, the employer may employ the alien beneficiary, and the alien beneficiary is given a "cap number" allowing him or her to obtain a visa for temporary employment in the United States.  8 U.S.C. § 1184(g)(3).  The alien beneficiary is also considered "cap exempt," which means "that if the beneficiary obtains employment with another employer during the period that his or her visa is valid, the subsequent employer does not have to pursue the entire two-step process to obtain a visa allowing the beneficiary to remain in the United States but simply submits an H-1B petition to change the alien's employer."  Atabekov v. U.S. Citizenship & Immigr. Servs., 717 F. Supp. 3d 850, 855-56 (D. Neb. 2024) (citing 8 U.S.C. § 1184(g)(7)).

8 C.F.R. § 214.2 provides, however, that an H-1B petition "will be denied if it is determined that the statements on the petition . . . were inaccurate, fraudulent, or misrepresented a material fact[.]"  Id. at § 214.2(h)(10)(ii).  In such circumstances, USCIS's approval of an H-1B petition may be revoked "at any time, even after the expiration of the petition."  8 C.F.R § 214.2(h)(11)(i)(B).  And in the event that the employer petitioner "files a written withdrawal of the petition," the applicable regulations provide for "immediate[] and automatic[] revo[cation]" of the approval of the petition.  8 C.F.R § 214.2(h)(11)(ii).

If USCIS determines that (1) "[t]he statement of facts contained in the petition . . . was not true and correct, [and was] inaccurate, fraudulent, or misrepresented a material fact," 8 C.F.R. § 214.2(h)(11)(iii)(A)(2); and (2) decides to initiate revocation, the agency must send the petitioning employer "a notice of intent to revoke the petition."  The petitioning employer may then either contest the revocation or withdraw the petition.  See 8 C.F.R. § 103.2(b).

If USCIS finds that an H-1B visa was procured "by fraud or willfully misrepresenting a material fact and such visa or nonimmigrant status is revoked, then one number shall be restored to the total number of aliens who may be issued visas" under the statutorily imposed numerical limitations "in the fiscal year in which the petition is revoked."  8 U.S.C. § 1184(g)(3).  In other words, the alien beneficiary of a visa obtained by fraud or willful misrepresentation loses their "cap number."  That cap number is returned to the pool of available cap numbers for that fiscal year.  Loss of a cap number does not necessarily mean that a H-1B beneficiary loses their status in the United States.  Instead, it means the beneficiary will require a new cap number to extend his or her H-1B status beyond the period of validity of their current visa.  (See Orise Decl. (Dkt. No. 37) ¶ 18); Narambatla v. United States Dep't of Homeland Sec., 770 F. Supp. 3d 1264, 1266 (W.D. Wash. 2025) ("Once a noncitizen loses their cap number, an

employer would need to go through the H-1B lottery process again in a new fiscal year.  If the H-1B registration is randomly selected in the lottery, the noncitizen would then receive a new cap number.").

## II.    KANTAMNENI'S H-1B VISA[3]

On August 9, 2013, Plaintiff Kantamneni was admitted to the United States in F-1 Nonimmigrant Student Status for the duration of his full course of study or authorized practical training.  (Orise Decl. (Dkt. No. 37) ¶ 7)

### A.    The Aurbeta Petition

On March 4, 2022, Aurbeta Consulting Services, Inc. ("Aurbeta") registered to file a petition for a fiscal year 2023 H-1B visa for Plaintiff.  (Id. ¶ 8)  USCIS subsequently selected Aurbeta's registration in the lottery and notified Aurbeta that it could file an H-1B petition based on that registration.  (Id.; id., Ex. 1 (March 25, 2022, Selection Notice) (Dkt. No. 37-1))  On May 31, 2022, Aurbeta filed a Form I-129 H-1B petition for Kantamneni, subject to the cap for beneficiaries with a master's degree or higher.  (Id. ¶ 9)  The petition "sought to classify Kantamneni as a temporary worker in a specialty occupation under Section 101(a)(15)(H)(i)(b) of the [INA]," and "requested a change in Plaintiff's status from F-1 to H-1B nonimmigrant status, and an 'extension of stay' for the period between October 1, 2022 and September 30, 2025."  (Id. ¶ 10)

On October 1, 2022, USCIS approved Aurbeta's H-1B petition.  (Id. ¶ 11; Am. Cmplt. (Dkt. No. 27) ¶ 118)  As a result, Plaintiff was granted nonimmigrant H-1B status, was

---

[3]  The Court's factual statement is drawn from the Amended Complaint and from declarations and other materials submitted by the parties in connection with the pending motion to dismiss. As discussed below, for purposes of a Rule 12(b)(1) motion, a court must accept as true all well-pled facts alleged in a complaint, and may also "refer to evidence outside the pleadings." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

permitted to remain in the United States and work at Aurbeta, and was counted towards the H-1B master's cap numerical allocation.  (Orise Decl. (Dkt. No. 37) ¶ 11; id., Ex. 2 (Oct. 1, 2022 Approval Notice (Dkt. No. 37-2))

### B.     The Infotran Petition

According to Kantamneni, "[o]ne month after approval of the visa petition, [he] became uncomfortable with his initial employer's operations, and sought to transfer his employment and H-1B visa to a new employer."  (Am. Cmplt. (Dkt. No. 27) ¶ 122)  On November 1, 2022, Infotran Engineers & Architects, P.C. ("Infotran") filed a Form I-129 with USCIS seeking permission to hire Plaintiff as an H-1B worker under section 101(a)(15)(H)(i)(b) of the INA.  (Orise Decl. (Dkt. No. 37) ¶ 12)  The petition sought to change Plaintiff's employer from Aurbeta to Infotran, and requested a validity period that ran through October 2025.  (Id.) The petition was also submitted as "cap exempt" pursuant to 8 U.S.C. § 1184(g)(7), because of the previously approved Aurbeta H-1B visa petition.  Infotran submitted a copy of the Aurbeta Approval Notice with its petition.  (Id.)

On January 31, 2023, USCIS approved the Infotran petition, thereby granting the request to change Plaintiff's employer and extend his nonimmigrant H-1B status by one month. (Id. ¶ 13; see also id., Ex. 3 (Jan. 31, 2023, Approval Notice (Dkt. No. 37-3))

### C.     Revocation of Aurbeta's Petition

On February 23, 2023, USCIS issued a Notice of Intent to Revoke the Aurbeta petition (the "Revocation Notice").  (Id. ¶ 14; Rev. Not. (Dkt. No. 37-4); Am. Cmplt. (Dkt. No. 27) ¶ 125)  The Revocation Notice alleges that Aurbeta violated 8 C.F.R. § 214.2(h)(11)(iii)(A)(2), because "[t]he statement of facts contained in the petition . . . was not true and correct, [and was] inaccurate, fraudulent, or misrepresented a material fact."  (Rev. Not. (Dkt. No. 37-4) at 1)

As to the alleged inaccuracies, the Revocation Notice states that, "[b]ased on USCIS records, it appears that you worked with another registrant, petitioner, agent, or other individual or entity to submit multiple registrations to unfairly increase [the] chances of selection for the beneficiary." (Id. at 3)  In this regard, the Revocation Notice cites five H-1B cap-subject petitions submitted by various entities in the same fiscal year for Kantamneni, and notes that USCIS records indicate that Aurbeta and Infotran are "affiliate[d] through familial relationships and shared officers [and] organizers." (Id. at 3-4)  The Revocation Notice also asserts that Aurbeta has "not established that the position offered to the beneficiary qualifies as a specialty occupation." (Id. at 5)

On March 8, 2023, Aurbeta withdrew its H-1B petition "effective immediately." (Orise Decl. (Dkt. No. 37) ¶ 15; id., Ex. 5 (March 8, 2023 Withdrawal Req.) (Dkt. No. 37-5)) "On April 20, 2023, USCIS accepted the withdrawal of the Aurbeta H-1B . . . [p]etition and issued a notice of revocation to Aurbeta pursuant to 8 C.F.R. § 214.2(h)(11)(ii)." (Id. ¶ 16; id., Ex. 6 (Acceptance of Withdrawal) (Dkt. No. 37-6))  As a result of Aurbeta's withdrawal of its H-1B visa petition, Plaintiff lost his cap number. (Id. ¶ 16)

On August 23, 2023, USCIS announced that it had received a sufficient number of petitions to reach the congressionally mandated caps for the 2023 fiscal year. (Id. ¶ 17)

D.    **Plaintiff's Current Status**

Although USCIS has issued a Revocation Notice as to the Aurbeta petition, it has taken no such action as to the Infotran petition. (Id. ¶ 18)  Accordingly, the H-1B visa issued pursuant to that petition remains valid; Plaintiff remains in H-1B status in the United States; and he remains eligible to work in the United States until November 10, 2025. (Id.)  To extend his H-1B status beyond that date, an employer would have to "submit a registration on behalf of Kantamneni for possible selection toward upcoming fiscal year H-1B numerical allocations."  If

the registration were selected, "the employer could then file a corresponding . . . petition with USCIS for approval.  If approved, Kantamneni could then receive a cap number with which to petition for extension of his H-1B status."  (Id.)

USCIS does not contend that Plaintiff has made any material misrepresentations to the agency, nor has USCIS or any other component of DHS found that Plaintiff is inadmissible pursuant to 8 U.S.C § 1182(a)(6)(C)(i).  (Id. ¶ 23; see also Def. Br. (Dkt. No. 36) at 17 ("[N]either USCIS nor any part of DHS has made any determination that Plaintiff is inadmissible[.]"); Feb. 15, 2024 Pltf. Ltr. (Dkt. No. 26) at 1 (stating that Defendant "[h]as [c]larified that the Plaintiff has not been made inadmissible"))

## III.    PROCEDURAL HISTORY

The Complaint was filed on July 26, 2023.  (Dkt. No. 1)  In a November 21, 2023 letter, Defendant sought permission to move to dismiss (Dkt. No. 19), and on November 28, 2023, this Court set a briefing schedule.  (Dkt. No. 21)

On February 15, 2024 – before briefing was complete – Plaintiff filed an Amended Complaint.  (Dkt. No. 27)  The Amended Complaint asserts three violations of the APA.  Count One alleges that DHS "violated the APA when it enforced the anti-collusion rule and applied sanctions to Plaintiff[] without first conducting rulemaking."  (Am. Cmplt. (Dkt. No. 27) ¶ 151)  Count Two alleges that DHS exceeded its authority when it misconstrued 8 U.S.C. § 1182(a)(6)(C)(i) "to allow sanctioning the 'alien' without the aggrieved 'alien' communicating with or making a knowing and voluntary misrepresentation to a government official."  (Id. ¶ 162)  Count Three alleges that DHS's revocation of Plaintiff's cap number was procedurally deficient because it "was done without affording Plaintiff[], the affected part[y], notice and an opportunity to respond."  (Id. ¶ 171)

Plaintiff seeks, <u>inter alia</u>, (1) an injunction preventing DHS from "enforcing the anti-collusion rule and penalty until it has completed notice and comment rulemaking"; (2) a declaration that "DHS's authority to revoke a cap number for fraud is limited to instances of knowingly false statements made by the alien"; (3) a declaration that "DHS's interpretation of the phrase 'fraud or willfully misrepresenting a material fact' in 8 U.S.C. §§ 1182(a)(6)(C)(i) and 1184(g)(3) to be contrary to law"; (4) an order directing DHS "to provide notice to Plaintiff of its intent to revoke his cap H-1B number, and to allow him the opportunity to respond"; (5) reinstatement of "Plaintiff's cap H-1B number[] during the pendency of the notice and comment period"; and (6) an award of attorneys' fees "under the Equal Access to Justice Act."  (<u>Id.</u> at 31)

On May 9, 2024, Defendant moved to dismiss the Amended Complaint, arguing that Plaintiff's claims should be dismissed under (1) Rule 12(b)(1) for lack of Article III standing; and (2) Rule 12(b)(6) because Plaintiff has failed to state a claim that the Defendant violated the APA.  (<u>See</u> Def. Br. (Dkt. No. 36) at 6)

## DISCUSSION

## I.    <u>LEGAL STANDARDS</u>

### A.    <u>Rule 12(b)(1)</u>

"Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  <u>Morrison v. Nat'l Australia Bank Ltd.</u>, 547 F.3d 167, 170 (2d Cir. 2008), <u>aff'd</u>, 561 U.S. 247 (2010) (internal quotation marks and citation omitted).  "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  <u>Tandon v. Captain's Cove Marina of Bridgeport, Inc.</u>, 752 F.3d 239, 243 (2d Cir. 2014) (citing <u>Amidax Trading Grp. v.</u>

S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)).  "Where jurisdictional facts are placed in dispute, [however,] the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."  APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003) (internal quotation marks and citations omitted); Makarova, 201 F.3d at 113 ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.").

### B.    Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the complaint[,]" Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff."  Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (alteration in original) (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests."  Port Dock & Stone Corp. v. Oldcastle Northeast Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish an entitlement to relief]."  Iqbal, 556 U.S. at 678.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to

the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) and Hayden v. Cty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

## II.    ANALYSIS

### A.    Standing

As noted above, Defendant argues that this case should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because Plaintiff lacks standing.  (See Def. Br. (Dkt. No. 36) at 19-28)

#### 1.    Applicable Law

Federal court jurisdiction is limited to "'actual cases or controversies.'" Raines v. Byrd, 521 U.S. 811, 818 (1997) (quoting Simon v. E. Kentucky Welfare Rts. Org., 426 U.S. 26, 37 (1976).  "To state a case or controversy under Article III, a plaintiff must establish standing." Arizona Christian Sch. Tuition Org. v. Winn, 563 U.S. 125, 133 (2011).  The "'irreducible constitutional minimum' of standing consists of three elements.  The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (internal citations omitted) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)).

The requisite "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized[;] . . . and (b) actual or imminent, not conjectural or

hypothetical[.]" Lujan, 504 U.S. at 560 (internal quotation marks and citations omitted). In other words, "[t]he injury-in-fact requirement demands not only the existence of a legally cognizable injury, but also that the plaintiff [is] 'among the injured.'" Keepers, Inc. v. City of Milford, 807 F.3d 24, 42 (2d Cir. 2015) (quoting Lujan, 504 U.S. at 563). "Alleging a statutory violation does not, by itself, satisfy the injury-in-fact requirement for Article III standing if the underlying injury is not sufficiently concrete." Moreira v. Societe Generale, S.A., 125 F.4th 371, 385 (2d Cir. 2025) (citations omitted). "Concrete injuries encompass both 'traditional tangible harms, such as physical . . . or monetary harms,' and 'intangible harms' that involve injuries with 'a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" Id. (internal citations omitted) (quoting TransUnion LLC v. Ramirez, 594 U.S. 413, 425 (2021) and Packer ex rel. 1-800-Flowers.Com, Inc. v. Raging Cap. Mgmt., LLC, 105 F.4th 46, 52 (2d Cir. 2024)).

The injury-in-fact suffered by plaintiff must also "be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court[.]" Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown, 88 F.4th 344, 352 (2d Cir. 2023). "[N]o more than de facto causality" is necessary, however, "a standard that is . . . lower than for proximate causation." Id. at 353.

Finally, "[t]o satisfy the redressability element of Article III standing, a plaintiff must show that it is 'likely, as opposed to merely speculative, that the [alleged] injury will be redressed by a favorable decision.'" Soule v. Connecticut Ass'n of Sch., Inc., 90 F.4th 34, 47 (2d Cir. 2023) (en banc) (alteration in original) (quoting Lujan, 504 U.S. at 561). "A plaintiff makes this showing when the relief sought 'would serve to . . . eliminate any effects of' the alleged legal

violation that produced the injury in fact." Id. (quoting <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 105-06 (1998)).

Plaintiff bears the burden of establishing standing, and "at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." <u>Spokeo</u>, 578 U.S. at 338 (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 518 (1975)). Moreover, a plaintiff "must demonstrate standing for each claim that they press and for each form of relief that they seek[.]" <u>TransUnion</u>, 594 U.S. at 431.

### 2.    <u>Analysis</u>

As to injury, the Amended Complaint alleges that

1.  Defendant found Plaintiff inadmissible even though "Plaintiff did not make any knowing and voluntary misrepresentation to a government official" (Am. Cmplt. (Dkt. No. 27) ¶ 164), and

2.  Plaintiff "has a statutorily created right to his H-1B cap number," and Defendant revoked his cap number without affording him "notice and an opportunity to respond." (<u>Id.</u> ¶¶ 168, 171)

### a.    <u>Whether DHS Has Found Plaintiff Inadmissible</u>

The Amended Complaint alleges that Defendant has found Plaintiff inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i). (<u>Id.</u> ¶ 164) That provision renders inadmissible aliens who seek to procure a visa "by fraud or willfully misrepresenting a material fact." (<u>See</u> Am. Cmplt. (Dkt. No. 27) ¶ 160-66)

Plaintiff has since conceded, however, that DHS has made no finding that he is inadmissible. (<u>See</u> Feb. 15, 2024 Pltf. Ltr. (Dkt. No. 26) at 1 (stating that "[t]he Government [h]as [c]larified that the Plaintiff has not been made inadmissible," and that "[g]iven the government's position this issue need not be raised")) In sum, the Amended Complaint's allegation that Plaintiff has been found inadmissible provides no basis for standing here. (Orise

Decl. (Dkt. No. 37) ¶ 23) ("USCIS records confirm that neither USCIS nor any component of DHS has made any inadmissibility finding against Kantamneni individually.")

**b.      Revocation of Plaintiff's H-1B Cap Number**

In seeking to establish standing, Plaintiff also argues that the revocation of his H-1B cap number is an injury in fact that is fairly traceable to DHS and redressable by this Court. (Am. Cmplt. (Dkt. No. 27) ¶¶ 154, 168; see also Pltf. Opp. (Dkt. No. 39) at 10, 20)

DHS responds that any alleged injury that Plaintiff has suffered as a result of the revocation of his H-1B cap number is not traceable to USCIS's actions and is not redressable by this Court.  (Def. Br. (Dkt. No. 36) at 22-28)[4]

**i.      Traceability**

As to traceability, Defendant argues that "[a]ny alleged injuries regarding [Plaintiff's] H-1B status and availability of a cap number are directly traceable to Aurbeta's filing of the Aurbeta H-1B Visa Petition, Aurbeta's failure to respond to the [Revocation Notice], and Aurbeta's withdrawal of [its H-1B visa] petition 'effective immediately,'" rather than to any action by DHS.  (Def. Br. (Dkt. No. 36) at 25)

---

[4]  Defendant does not address in its opening brief whether the revocation of Plaintiff's H-1B cap number constitutes an injury-in-fact.  (See Def. Br. (Dkt. No. 36) at 19-28)  In its reply brief, Defendant argues that absent an allegation that Plaintiff has attempted – since the revocation of his H-1B cap number – to transfer to another employer, the revocation standing alone does not constitute an injury-in-fact.  (See Def. Reply (Dkt. No. 38) at 7 ("While the automatic loss of Plaintiff's cap number might prevent Plaintiff from transferring H-1B employers during the period of current validity – an injury which Plaintiff has not alleged – any such hypothetical future injury is not fairly traceable to USCIS or redressable by this Court."))  Because Defendant raises its injury-in-fact argument for the first time in its reply brief, it will not be considered by the Court.  Cobb v. Am. Urb. Radio Networks LLC, No. 24 CIV. 1305, 2025 WL 641437, at *3 n.2 (S.D.N.Y. Feb. 27, 2025) ("[A]n argument omitted in a party's opening brief and raised for the first time on reply, is waived."); JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V., 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an . . . opening brief are waived" even if they are raised "in a reply brief."); Gonzalez v. United States, No. 17CV1093, 2019 WL 3408886, at *2 n.2 (S.D.N.Y. July 29, 2019) ("Arguments raised for the first time in reply briefs are waived.").

In <u>Atabekov v. USCIS</u>, 717 F. Supp. 3d. 850, 857 (D. Neb. 2024), the court found a lack of traceability on strikingly similar facts.  In <u>Atabekov</u>, plaintiff received a cap-subject H-1B visa to work at a particular employer.  <u>Atabekov</u>, 717 F. Supp. 3d. at 857.  He then obtained a new job.  The new employer filed a new H-1B visa petition on his behalf.  <u>Id.</u>  USCIS then sent the first employer a Revocation Notice, and transmitted a Notice of Intent to Deny to the new employer.  <u>Id.</u>  The Revocation Notice stated that the first employer had violated the attestation requirement by colluding with other employer petitioners to submit multiple petitions "to unfairly increase [the] chances of selection for the beneficiary."  <u>Id.</u> at 858.  The first employer then requested to withdraw the H-1B petition it had filed on plaintiff's behalf.  USCIS granted that application, revoked its approval of that petition, and returned plaintiff's cap number to the total pool.  <u>Id.</u> at 859.  The second employer's H-1B petition for plaintiff was denied based on the alleged collusion underlying the revocation, which left plaintiff without legal status in the United States.  <u>Id.</u> at 861.

Plaintiff then filed suit against USCIS, seeking a declaratory judgment that the agency had violated the APA.  Plaintiff argued that "USCIS's revocation of his [H-1B visa petition] was arbitrary, capricious, and otherwise not in accordance with the law," and complained that the attestation requirement was "not created through the notice-and-comment process."  USCIS moved to dismiss, arguing <u>inter</u> <u>alia</u> that plaintiff lacked Article III standing.  <u>Id.</u> at 862.

The court granted USCIS's motion to dismiss, finding that plaintiff lacked Article III standing based on, <u>inter</u> <u>alia</u>, a lack of traceability.  In so ruling, the court concluded that plaintiff's injury was traceable to his first employer's misconduct, not USCIS action.  <u>Id.</u> at 866-67.  The court reasoned that "[b]ecause a fraudulent statement or willful misrepresentation by a

third party – here, the employer filing the petition – is required to violate the attestation, any causal connection between the prohibition [against false statements] in the attestation and the loss of [plaintiff's] cap number is not sufficiently 'direct'; it is instead 'overly attenuated.'" Id. at 866 (quoting Crain v. Crain, 72 F.4th 269, 278 (8th Cir. 2023)).  The court further reasoned that while plaintiff challenged the new attestation requirement, "the applicable statutes and regulations already make clear that any kind of 'fraud' or 'willful misrepresentation' in the registration or petition process would result in revocation of the petition."  Plaintiff's injury was thus "no more traceable to the challenged part of the attestation than it is to these other prohibitions on fraud and willful misrepresentation." Id. at 866-67.

        The same logic applies here.  Plaintiff's alleged injury – the revocation of his cap number – was the result of Aurbeta's actions, and not those of DHS/USCIS.  It was Aurbeta's alleged collusion in filing the H-1B petition, its failure to substantively respond to the Notice of Intent to Revoke, and its withdrawal of its H-1B visa petition that caused Plaintiff to lose his cap number.  This is the sort of "'independent action of some third party not before the court'" that severs the causal link necessary to establish standing.  Lujan, 504 U.S. at 560 (quoting Simon, 426 U.S. at 42; see also Sharma v. United States Dep't of Homeland Sec., 755 F. Supp. 3d 1220, 1226 (N.D. Cal. 2024) (the employer and H-1B visa petitioner, "as a third party not before the court, snapped the causal connection needed for traceability when it independently acted to commit fraud").

        And to the extent Plaintiff contends that the revocation of his cap number stemmed from a procedurally invalid attestation requirement (see Am. Cmplt. (Dkt. No. 27) ¶¶ 87-92), his injury is not traceable to that requirement, because there were multiple pre-existing statutes and regulations that prohibit fraud and willful misrepresentation in the H-1B lottery

process, and Plaintiff has not challenged the legitimacy of these pre-existing statutes and regulations.  See, e.g., 8 U.S.C. § 1184(g)(3) (providing for loss of an alien's cap number where an alien "is found to have been issued such visa or otherwise provided such status by fraud or willfully misrepresenting a material fact and such visa or nonimmigrant status is revoked"); 8 C.F.R. § 214.2(h)(10)(ii) ("The petition will be denied if it is determined that the statements on the petition were inaccurate, fraudulent, or misrepresented a material fact."); 8 C.F.R. § 214.2(h)(11)(iii)(A)(2) (providing for revocation if "[t]he statement of facts contained in the petition . . . was not true and correct, inaccurate, fraudulent, or misrepresented a material fact"). In any event, to establish traceability, a plaintiff's alleged injury "must be 'fairly traceable to the challenged action of the defendant,'" not some other action or preexisting regulation.  Dep't of Educ. v. Brown, 600 U.S. 551, 561 (2023) (quoting Lujan, 504 U.S. at 560).

       Moreover, where – as here – a plaintiff attempts to establish traceability through government regulation of a third party – such as Plaintiff's first employer – standing is "ordinarily substantially more difficult to establish," Lujan, 504 U.S. at 562 (internal quotations omitted), because "the plaintiff must show that the 'third parties will likely react in predictable ways' that in turn will injure the plaintiff[]."  Food & Drug Admin. v. All. for Hippocratic Med., 602 U.S. 367, 383 (2024) (quoting California v. Texas, 593 U.S. 659, 675 (2021)).  And such a showing "must not be too speculative or too attenuated."  Id. (citation omitted).

       Here, Plaintiff has not plausibly alleged that it was predictable that – in response to the anti-collusion attestation requirement of the H-1B visa petition – Aurbeta would elect to commit fraud.  See Sharma, 755 F. Supp. 3d at 1225-26 (plaintiff's employer "snapped the causal connection needed for traceability when it independently acted to commit fraud"); Atabekov, 717 F. Supp. 3d at 866 (finding no traceability between "[plaintiff's] injury and USCIS's attestation

requirement" because of "the independent action" of plaintiff's employer, "which falsely attested that it . . . had not worked with any other registrants to unfairly increase [the] chances of selection for [plaintiff]").  In sum, the Amended Complaint does not plausibly allege that the revocation of Plaintiff's cap number is traceable to Defendant's actions rather than Aurbeta's fraud.

Plaintiff argues, however, that Atabekov is distinguishable, because Atabekov's complaint was not premised on "the promulgation of a legislative rule without notice and comment."  (Pltf. Opp. (Dkt. No. 39) at 19 n.2)  But Plaintiff is wrong, because "[t]he gravamen of [Atabekov's APA claim was] that the 'new criteria' for the H-1B registration system set out in the attestation were not created through the notice-and-comment process[.]"  Atabekov, 717 F. Supp. 3d. at 861.

Plaintiff also cites Narambatla v. United States Dep't of Homeland Sec., 2:23-cv-01275, 2024 WL 1659025 (W.D. Wash. Apr. 17, 2024), in arguing that loss of a cap number is sufficient to demonstrate traceability.  In Narambatla, ten citizens of India sued after their employers received Revocation Notices alleging fraud and misrepresentations in the employers' H-1B visa petitions.  Id. at *2.  Plaintiffs claimed that they lost both their H-1B cap numbers and their H-1B status.  Id. at *3-4.  In denying DHS's motion to dismiss plaintiffs' claim premised on the "loss of H-1B status," the court found that loss of this status is a "cognizable injur[y]" that is "concrete, particularized, and traceable to DHS's revocation of their legal nonimmigrant status."  Id. at *5.  The Narambatla court's holding as to traceability does not assist Plaintiff here,

however, because Plaintiff has lost only his cap number, and has not lost his H-1B status.  (See Orise Decl. (Dkt. No. 37) ¶¶ 20, 23-24)[5]

And while the Narambatla court states that a "lost opportunity" to receive an immigration benefit can constitute a traceable injury sufficient to establish standing, Narambatla, 2024 WL 1659025, at *4 (citing Abboud v. I.N.S., 140 F.3d 843, 847 (9th Cir. 1998) and Hsiao v. Scalia, 821 F. App'x 680, 683-84 (9th Cir. 2020)), here Kantamneni still has an opportunity to receive a new H-1B cap number, because he is eligible to re-enter the lottery once his current status expires.  (Orise Decl. (Dkt. No. 37) ¶ 24)

In sum, the Amended Complaint does not plausibly allege that Plaintiff suffered an injury that is traceable to Defendant's challenged conduct.

### ii.    Redressability

Defendant also argues that the revocation of Plaintiff's cap number is not redressable by this Court.  In this regard, Defendant points out that "Plaintiff does not challenge the revocation of the Aurbeta H-1B Visa Petition approval after Aurbeta withdrew the petition . . . or the evidence of fraud or misrepresentation by Aurbeta and other employer entities underlying the revocation."  Therefore, any injury Plaintiff may have suffered "is not redressable by a favorable decision from this court because USCIS properly revoked the underlying petition[.]"  Moreover, "there are no longer any remaining cap numbers for the period of his approved H-1B petition."  (Def. Br. (Dkt. No. 36) at 25, 27)

Although the Atabekov court concluded that Atabekov's injury was not traceable to USCIS, it went on to consider whether he had demonstrated redressability.  The court found

---

[5]  At summary judgment, the Narambatla court granted DHS's motion for summary judgment, ruling that "DHS did not act arbitrarily and capriciously in revoking Plaintiffs' H-1B cap numbers because of their employers' misrepresentations during the registration process." Narambatla, 770 F. Supp. 3d 1264, 1269-70 (W.D. Wash. 2025).

that "even if the challenged part of the attestation requirement were nullified, Atabekov's injury

would not be relieved, because other unchallenged parts of the attestation and other unchallenged

regulations would also prohibit fraud or willful misrepresentation in the registration and petition

for Atabekov's H-1B visa." Id. at 868.  Because the revocation of approval for the H-1B visa

petition was independently supported by a finding of a "fraudulent attestation that [Atabekov]

had a valid offer of employment," the petition would have been revoked even absent the

collusion of multiple employers.  Id. at 868-69.  Accordingly, Atabekov's injury was not

redressable by the court.

        The same is true here because – as discussed above – the Revocation Notice cites

two independent grounds for revocation:  a violation of the anti-collusion rule referenced in the

attestation, and Aurbeta's failure to demonstrate that the position being offered to Plaintiff

qualifies as a "specialty occupation."  (Rev. Not. (Dkt. No. 37-4) at 4-7)  Given that Plaintiff does

not challenge the latter ground, a finding that the attestation requirement is invalid would not

permit Plaintiff to recoup his cap number.  Accordingly, his alleged injury is not redressable by

this Court.  See Knight v. City of New York, No. 22-CV-3215 (VEC)(VF), 2024 WL 1126309, at

*4 (S.D.N.Y. Jan. 17, 2024) (finding no redressability where "a ruling striking down [the

contested] provision would not redress [plaintiff's] injury because separate . . . regulations still

bar his desired conduct"), report and recommendation adopted in relevant part, No. 22-CV-3215

(VEC), 2024 WL 1096991 (S.D.N.Y. Mar. 13, 2024); M.J. Ent. Enters., Inc. v. City of Mount

Vernon, 234 F. Supp. 2d 306, 311-13 (S.D.N.Y. 2002) (finding no redressability because "a ruling

by this Court invalidating the 'special permit use' provisions of the Zoning Code would not

redress plaintiff's injury," given that  plaintiff's proposed use was barred by another ordinance);

see also, e.g., Kaspersky Lab, Inc. v. United States Dep't of Homeland Sec., 909 F.3d 446, 465

(D.C. Cir. 2018) (holding that an injury caused by agency action was not redressable where a federal statute also prohibited plaintiff's conduct).

Finally, the revocation of Plaintiff's cap number is not redressable by this Court because there are no longer any remaining cap numbers for fiscal year 2023. (See Orise Decl. (Dkt. No. 37) ¶ 17); see Next Generation Tech., Inc. v. Jaddou, No. 21CIV1390PGGRWL, 2023 WL 2570643, at *8 (S.D.N.Y. Mar. 18, 2023) (finding no redressability where "there are no longer any visa numbers available [for the relevant years] because the caps were reached long ago"); see also Nat'l Basketball Retired Players Ass'n v. U.S.C.I.S., No. 16 CV 09454, 2017 WL 2653081, at *4 (N.D. Ill. June 20, 2017) ("This Court cannot raise the numerical caps that Congress has set by statute. To the extent that the [H-1B visa] petition was for [a] fiscal year [for which the cap has been reached], . . . plaintiffs lack standing[,] because they have failed to establish that a favorable ruling by this Court is likely to redress their alleged injury."); Alpha K9 Pet Servs. v. Johnson, 171 F. Supp. 3d 568, 580-81 (S.D. Tex. 2016) (holding that plaintiffs seeking H-2B visas for the 2015 fiscal year had not shown "redressability," because "USCIS ha[d] already reached its statutory H-2B visa cap for the 2015 fiscal year").

In sum, the revocation of Plaintiff's cap number is neither traceable to DHS nor redressable by this Court. Accordingly, this alleged injury does not provide a basis for standing.

### c.    Lack of Notice

As another basis for standing, Plaintiff asserts that his cap number was revoked without "notice and an opportunity to respond." (Am. Cmplt. (Dkt. No. 27) ¶ 171; see also Pltf. Opp. (Dkt. No. 39) at 10) Defendant counters that "Plaintiff's alleged lost opportunity to be heard . . . is not a concrete injury," and in any event is not traceable to Defendant or redressable by this Court. (See Def. Reply Br. (Dkt. No. 38) at 10)

### i.    <u>Injury in Fact</u>

Generally, "in the absence of a connection between a procedural violation and a concrete interest, a bare violation of the former does not manifest an injury in fact." <u>Strubel v. Comenity Bank</u>, 842 F.3d 181, 189 (2d Cir. 2016). "[A]n alleged procedural violation can by itself manifest concrete injury[, however,] where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a 'risk of real harm' to that concrete interest." <u>Id.</u> at 190 (quoting <u>Spokeo</u>, 578 U.S. at 341).

Here, Plaintiff alleges a procedural violation of the APA's notice requirements. (<u>See</u> Am. Cmplt. (Dkt. No. 27) ¶¶ 167-77; Pltf. Opp. (Dkt. No. 39) at 21)

The first issue presented by Plaintiff's claimed procedural violation is whether he was entitled to notice that his cap number would be revoked. Where a person is entitled to notice under the APA – prior to an agency adjudication – the agency must provide that person with notice of, <u>inter alia</u>, "the time, place, and nature of the hearing[.]" 5 U.S.C. § 554(b). The agency must also "give all interested parties [an] opportunity for," <u>inter alia</u> "the submission and consideration of facts [and] arguments[.]" <u>Id.</u> § 554(c).

Beneficiaries of employers' H1-B petitions – such as Plaintiff – are not entitled to notice under these provisions, however, because they are not "affected parties" with legal standing in the administrative proceeding. <u>See</u>, <u>e.g.</u>, 8 C.F.R. § 103.2(a)(3) ("A beneficiary of a petition is not a recognized party in such a proceeding"); <u>id.</u> § 103.3(a)(1)(iii)(B) ("[<u>A</u>]ffected <u>party</u> . . . means the person or entity with legal standing in a proceeding. It does not include the beneficiary of a visa petition.") (emphasis in original). In sum, because Plaintiff was not entitled – under the applicable statutes and regulations – to notice of, and an opportunity to respond regarding, the revocation of his cap number, there was no procedural violation.

To the extent that Plaintiff's notice argument is construed as alleging a violation of procedural due process, "an alleged procedural due process violation . . . is insufficient on its own to create an injury for standing purposes." Otrompke v. First Dep't Comm. on Character & Fitness, No. 22 CIV. 4676 (LGS), 2024 WL 1235601, at *5 (S.D.N.Y. Mar. 22, 2024) (citing Summers v. Earth Island Inst., 555 U.S. 488, 496 (2009)).

Plaintiff argues, however, that under Mantena v. Johnson, 809 F.3d 721 (2d Cir. 2015), he "has ple[d] an injury-in-fact that is 'traceable to failed notice.'" (Pltf. Opp. (Dkt. No. 39) at 10) (quoting Mantena, 809 F.3d at 731). Mantena is not on point, however.

In Mantena, plaintiff was an H-1B visa holder who worked as a computer programmer. Mantena, 809 F.3d at 723. Her employer filed an I-140 "Immigrant Petition for Alien Worker" on Mantena's behalf, and Mantena herself then filed for an adjustment of status to obtain permanent residency, colloquially known as a "green card." Id. at 723-24. Mantena then moved on to a different employer. Mantena's previous employer thereafter pleaded guilty to mail fraud, albeit unrelated to the petition it had submitted on Mantena's behalf. USCIS nonetheless "decided to initiate the revocation of all petitions filed by the employer." Id. at 724. While Mantena's former employer was informed of USCIS's intent to revoke its approval of the employer's I-140 petition submitted on behalf of Mantena, Mantena received no notice of the revocation. Id. Mantena's green card application was "automatically denied" given USCIS's decision revoking its approval of the former employer's I-140 petition. Id.

On appeal, the Second Circuit ruled that "Mantena [had] pled an injury-in-fact that would be traceable to failed notice. The revocation of Mantena's employer's I-140 petition (and subsequent automatic denial of her I-485 application) ended Mantena's multi[-]year attempt to secure a green card," and the "'lost opportunity'" to obtain a green card "'is itself a concrete

injury'" that would be redressable by a favorable decision.  Id. at 731 (quoting Patel v. U.S.

Citizenship & Immigration Servs., 732 F.3d 633, 638 (6th Cir. 2013)).  Moreover, these concrete

and particularized injuries were "traceable" to the challenged agency action because of the

"failed notice," and could be redressed by granting Mantena a new opportunity to pursue a green

card.  Id.

        Here, by contrast, Plaintiff currently enjoys H-1B status, and has not lost the

opportunity to obtain a new H-1B visa when his current visa expires.  (See Orise Decl. (Dkt. No.

37) ¶ 18) (explaining that (1) Plaintiff "remains in H-1B status within the United States, with an

unexpired I-94 that remains valid until November 10, 2025"; (2) an employer seeking to employ

Plaintiff could submit a new registration to participate in the H1-B visa lottery; (3) if the

employer's registration is selected in the lottery, "the employer could then file a corresponding

Form I-129 H-1B cap-subject petition" on Plaintiff's behalf; and (4) if the petition is approved,

Plaintiff would "receive a cap number with which to petition for extension of his H-1B status.");

see also Sharma, 755 F. Supp. 3d at 1228 (finding no redressability where plaintiff lost his H-1B

cap number, but had not lost his H-1B status and "still ha[d] the opportunity to receive a visa" by

"go[ing] through the lottery process again, and this time, without the unfair advantage his

previous employer had given him").

        In sum, Plaintiff has not suffered the type of injury-in-fact identified by the

Mantena court.

        Narambatla v. United States Dep't of Homeland Sec., 2:23-cv-01275, 2024 WL

1659025 (W.D. Wash. Apr. 17, 2024) – also cited by Plaintiff in support of his notice theory of

standing – does not assist his cause.  As discussed above, Narambatla involves citizens of India

who were beneficiaries of H-1B visa petitions submitted by various employers.  Id. at *2.  After

the H-1B visa petitions were approved, USCIS sent each employer a Revocation Notice, citing fraud or misrepresentation by the employer.  Id.  The employees claimed that – as a result of the Revocation Notice – they had lost their H-1B visa status.  Id. at *3.  The court held that plaintiffs had alleged an injury-in-fact given their "loss of H-1B status and their lack of notice in the [Revocation Notice] process."  Id. at *5.  Here, as discussed above, Plaintiff has not lost his H-1B status.  Accordingly, Narambatla is distinguishable.[6]

The same is true of the other authorities Plaintiff cites.  In each case, the injury-in-fact was either the loss of some kind of immigration status, or the loss of an opportunity to obtain that status.  See Kurapati v. U.S. Bureau of Citizenship & Immigration Services, 775 F.3d 1255, 1260 (11th Cir. 2014) (citing "the deprivation of an opportunity to apply for adjustment of status" as injury-in-fact); Patel, 732 F.3d at 638 (citing "the loss of an opportunity to become a permanent resident" as injury-in-fact); Rossville Convenience & Gas, 2021 WL 5865446, at *7 (injury-in-fact adequately pled where USCIS denied an employer's visa petition, thereby preventing plaintiff "from receiving the visa . . . [and] from applying to become a lawful

---

[6]  To the extent that Narambatla holds that "lack of notice in the [Revocation Notice] process" – standing alone – is sufficient to constitute an injury-in-fact, this Court is not persuaded.  Absent a concrete harm – such as the loss of H-1B status or an opportunity to obtain H-1B status – "a bare procedural violation" cannot "satisfy the injury-in-fact requirement of Article III."  Spokeo, 578 U.S. at 341.

Moreover, the three cases cited by the Narambatla court in support of its holding that a lack of notice can alone constitute an injury-in-fact all involve a loss of status or a loss of an opportunity to apply for a change in status.  None of these cases holds that lack of notice – standing alone – constitutes an injury-in-fact.  See Stellar IT Sols., Inc. v. United States Citizenship & Immigr. Servs., No. CV 18-2015 (RC), 2018 WL 6047413, at *5 (D.D.C. Nov. 19, 2018) (citing plaintiff's "loss of his legal nonimmigrant status" as the injury-in-fact); Rossville Convenience & Gas, Inc. v. Garland, No. CV 20-2218 (JDB), 2021 WL 5865446, at *7 (D.D.C. Dec. 10, 2021) (stating that plaintiff "not . . . receiving the visa" and "[l]osing a significant opportunity to receive an immigrant visa" constitutes injury-in-fact); Khedkar v. U.S. Citizenship & Immigr. Servs., 552 F. Supp. 3d 1, *9 (D.D.C. 2021) (citing plaintiff's loss of "the chance at securing permanent residency" as the injury-in-fact).

permanent resident of this country"); <u>Khedkar</u>, 552 F. Supp. 3d at 9 (injury-in-fact adequately

pled where plaintiff "now lacks the chance at securing permanent residency as a result [of the

challenged agency action]"); <u>Stellar IT Sols.</u>, 2018 WL 6047413, at *5 (citing "the loss of . . .

legal nonimmigrant status" as injury-in-fact).

        In sum, Plaintiff's alleged lack of notice is a procedural violation that is

insufficient – standing alone – to constitute an injury-in-fact.  Because Plaintiff has not lost his

H-1B status and has not lost an opportunity to pursue cap-exempt H-1B status in the future, he

has not demonstrated an injury-in-fact.

### ii.      <u>Traceability and Redressability</u>

        Even if Plaintiff could show an injury-in-fact premised on a lack of notice, the

Amended Complaint does not demonstrate traceability and redressability, largely for the same

reasons discussed above.

        Plaintiff's loss of his cap number resulted from Aurbeta's failure to respond to the

Revocation Notice and Aurbeta's later withdrawal of its H-1B visa petition.  There is no reason to

believe that – had Plaintiff received notice of the Revocation Notice sent to Aurbeta – he could

have persuaded Aurbeta (1) to contest the Revocation Notice; or (2) not to withdraw its H-1B visa

petition.  (<u>See</u> Orise Decl. (Dkt. No. 37) ¶¶ 15-16); <u>see also</u> <u>Sharma</u>, 755 F. Supp. 3d at 1227

(finding no redressability where the employer withdrew its H-1B petition after receiving a

Revocation Notice; "[p]laintiff would . . . not be able to use this opportunity to overcome [the

employer's] . . . fraud and reinstate his cap number," particularly where the employer "has . . .

demonstrated by withdrawing its petition that it would not help [p]laintiff with doing so").  In

sum, an order requiring notice to Plaintiff would not redress any cognizable injury-in-fact,

because the injury alleged by Plaintiff resulted from action taken by Aurbeta, a third party.  <u>See</u>

<u>Lujan</u>, 504 U.S. at 571 (no redressability where "redress of the only injury in fact . . . requires

action . . . [by third parties]; and any relief the District Court could have provided in this suit . . . was not likely to produce that action").

*      *      *      *

Plaintiff has not demonstrated that he has standing to pursue any of his claims. He has not been found inadmissible; his H-1B status remains active; and he has not lost any opportunity to obtain a cap number in a future fiscal year. Moreover, the injuries alleged by Plaintiff are traceable to Aurbeta's actions, and not to Defendant's actions. Plaintiff's purported injuries are likewise not redressable by this Court, given the unchallenged bases for Defendant's actions, and Aurbeta's independent decision to withdraw its H1-B petition. Accordingly, Plaintiffs claims will be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, based on a lack of standing.

### B.    Failure to State a Claim

"[A] court does not have the authority to reach the merits of a case where it finds that a plaintiff does not have standing." EMI Ent. World, Inc. v. Karen Recs., Inc., No. 05 CIV. 390 LAP, 2015 WL 1623805, at *2 (S.D.N.Y. Feb. 27, 2015). Accordingly, this Court does not reach Defendant's arguments that the Amended Complaint fails to state a claim.

### C.    Leave to Amend

"[W]here a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice." Carter v. HealthPort Techs., LLC, 822 F.3d 47, 54 (2d Cir. 2016). Even where dismissal is without prejudice, however, a court must consider whether to grant leave to amend. See Harty v. W. Point Realty, Inc., 28 F.4th 435, 445 (2d Cir. 2022).

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). District courts "ha[ve]

broad discretion in determining whether to grant leave to amend[.]"  <u>Gurary v. Winehouse</u>, 235 F.3d 792, 801 (2d Cir. 2000).  Leave to amend may properly be denied, however, in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  <u>Ruotolo v. City of New York</u>, 514 F.3d 184, 191 (2d Cir. 2008) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962))  Moreover, "[l]eave may be denied where a plaintiff does not request to amend [his] pleading."  <u>Washington v. Networks Presentations</u>, No. 1:24-CV-00299 (ALC), 2025 WL 968741, *10 (S.D.N.Y. Mar. 31, 2025) (citing <u>Gallop v. Cheney</u>, 642 F.3d 364, 369 (2d Cir. 2011)).

       Here, leave to amend will be denied.  Plaintiff has already amended his complaint, having done so in response to a pre-motion letter and a motion to dismiss in which Defendant set forth its arguments as to why Plaintiff lacks standing.  (See Nov. 16, 2023 Def. Ltr. (Dkt. No. 19); Feb. 14, 2024 Pltf. Ltr. (Dkt. No. 26) at 1 (stating that Plaintiff filed the Amended Complaint "[u]pon reviewing the government's motion to dismiss"))  The Amended Complaint does not cure the defects identified by Defendant, however.  Moreover, Plaintiff has not requested leave to file a second amended complaint.  (See Pltf. Opp. (Dkt. No. 39))  Finally, further amendment would be futile, because there is no reason to believe that any further amendment could cure the defects in standing cited by Defendant prior to the filing of the Amended Complaint, and those identified by this Court in the instant opinion.

       Accordingly, the Amended Complaint will be dismissed without prejudice and without leave to amend.  <u>See Wahab v. Surya Nature, Inc.</u>, No. 1:24-CV-384 (MKV), 2025 WL 872112, at *5 (S.D.N.Y. Mar. 20, 2025) (dismissing on standing grounds without prejudice and without leave to amend).

## <u>CONCLUSION</u>

For the reasons stated above, Defendant's motion to dismiss (Dkt. No. 35) is granted. Dismissal is without prejudice. Leave to amend is denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 35), to enter judgment for Defendant, and to close this case.

Dated: New York, New York
      September 29, 2025            SO ORDERED.

                                            Paul G. Gardephe
                                            United States District Judge